UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADVANCED DERMATOLOGY, | ) | CASE NO. 5:20-cv-2826 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| PLAZA RESEARCH CORPORATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on plaintiff's motions for class certification (Doc. No. 9) and to permit discovery (Doc. No. 10). For the reasons that follow, plaintiff's motion for class certification is conditionally granted, and plaintiff's motion to permit class discovery is denied without prejudice.

**I.     Background**

Plaintiff Advanced Dermatology ("AD") filed a purported nationwide class action complaint against defendant Plaza Research Corporation ("PRC") alleging violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for sending unsolicited facsimiles to people and businesses who have not given their consent. (Doc. No. 1.) According to AD, PRC is a national medical marketing and market research firm that sends marketing facsimiles to medical offices to solicit their participation in marketing surveys for which the participants are compensated. (Doc. No. 9 at 3.)

AD alleges that on October 15, 2019, PRC, who had no prior or existing business relationship with AD, sent AD an unsolicited facsimile without AD's consent. (Doc. No. 1 ¶¶ 7,

8; *id*. at 8.[1]) The one page facsimile stated PRC was "recruiting Dermatologists across the nation to participate in an online interview discussing treatment options[,]" and that "[t]hose who participate [will] be compensated $450 for 1 hour of his/her time." (*Id.* at 8.) AD claims that the facsimile it received is a "form facsimile" that PRC sends nationwide without consent to solicit participation in its surveys and market research. (*Id.* ¶¶ 9–12.) AD further alleges that transmission of the facsimile by PRC violated the TCPA and damaged AD by causing injuries such as monetary loss due to cost of paper, ink, and toner, work interruption and loss of employee time, invasion of privacy, nuisance, and trespass by interfering with the use of office equipment to aid patients. (*Id.* ¶ 13.) On these facts, AD asserts one claim for violation of the TCPA, 47 U.S.C. §227, on behalf of itself and the class. (*Id.* ¶¶ 21–30.)

AD brings this TCPA action pursuant to Fed. R. Civ. P. 23 on behalf of itself and similarly situated individuals defined as follows:

> All persons in the United States who received a facsimile, soliciting their participation in a paid research study/project, from or on behalf of Defendant and who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from Defendant, within the four years prior to the filing of the Complaint until the class is certified.

(*Id.* ¶ 15.)

AD claims that the exact number of class members is unknown, but likely consists of thousands of individuals and businesses, and individual joinder of each class member in the case is impracticable. (*Id.* ¶ 16.) AD also claims that there are many common questions of fact and law common to AD and members of the proposed class, and that these common questions predominate over questions that may affect individual members of the proposed class, (*Id.* ¶ 17.) AD further

---

[1] Page number references are to the consecutive page numbers assigned to each individual document by the Court's electronic filing system.

alleges that its claims are typical of proposed class members and that it has sustained the same damages as other members of the proposed class as a result of PRC's actions. (*Id.* ¶ 18.) And lastly, AD alleges that it will fairly and adequately represent and protect the interest of proposed class members and has retained competent counsel experienced in complex litigation and class actions, including TCPA cases, and both AD and counsel are committed to prosecuting this action on behalf of all members of the proposed class. (*Id.* ¶ 19.)

Service was perfected upon PRC and, after PRC did not respond to the complaint and AD took no action to prosecute the case, the Court issued a show cause order. (Doc. No. 7.) In response to the show cause order, AD filed an application with the Clerk for entry of PRC's default, which was entered. (Doc. Nos. 8, 11.) After seeking an entry of default, plaintiff filed a motion for class certification pursuant to Fed. R. Civ. P. 23 for an order certifying the proposed class stated in the complaint (Doc. No. 9), and motion to permit class discovery (Doc. No. 10).

**II.     Discussion**

"As a threshold matter, the entry of default by the Clerk of the Court against [defendant] does not alter the Court's analysis for class certification. Certification under Rule 23 remains a necessary procedural requirement in order for the Class to recover damages." *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 472 (D. Del. 2014); *Coop. Med. Health Care Corp., P.A. v. Med. Synergy, Inc.*, No. 1:21-cv-00046, 2021 WL 3808939, at *2 (N.D. Ohio Aug. 26, 2021) ("As an initial matter, the Court notes that the Clerk's entry of default in this case is no barrier to certification of the Plaintiff's proposed class.") (internal quotation marks omitted) (collecting cases); *Wendell H. Stone Co., Inc. v. Five Star Adver., LLC*, No. 19-cv-3157, 2021 WL 1080398, at *2 (D. Col. Mar. 17, 2021) ("[E]ntry of default does not prevent the Court from certifying the

3

proposed class.") (collecting cases); *see also Lehman v. Calls After Hours*, No. 1:18-cv-2601, 2019 WL 8405591, at *1 (N.D. Ohio Aug. 16, 2019) (same).

As default has been entered against PRC, all of AD's well-pleaded factual allegations are deemed admitted by PRC's default. *Ford Motor Co. v. Cross*, 441 F. Supp, 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. and Guar.,* 661 F.2d 119, 124 (6th Cir. 1981)). These admissions include factual allegations relevant to the Court's Rule 23 analysis of AD's class certification motion. *Lehman*, 2019 WL 8405591, at *2 (collecting cases); *see also Toler v. Glob. Coll. of Nat. Med., Inc.*, No. 13-cv-10433, 2015 WL 1611274, at *1 (E.D. Mich. Apr. 10, 2015) ("The Sixth Circuit has held that the maintainability of a class action 'may be determined by the court on the basis of the pleadings, if sufficient facts are set forth.'") (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted)). And given the sufficiency of AD's factual allegations as pertains to the issue of class certification, and PRC's non-responsiveness to the complaint, application for entry of default, Clerk entry of default, and motion for class certification,[2] a hearing would likely be unproductive and not assist the Court in ruling on the pending motions. *See Toler*, 2015 WL 1611274, at *1 (determining that a hearing on the plaintiff's motion for class certification where default had been entered against defendant would be unproductive and unnecessary) (citation omitted).

### A. Motion for Class Certification Under Fed. R. Civ. P. 23

Fed. R. Civ. P. 23 governs class action litigation in federal court. The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S. Ct. 2545, 61 L. Ed. 2d 176

---

[2] The record in this case reflects that the listed documents were served upon PRC at its address of record.

(1979). In order for this exception to apply, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974)).

Rule 23(a) sets out four prerequisites to a class action—numerosity, commonality, typicality, and adequacy. These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) (quotation marks and citation omitted). Satisfaction of these requirement is not "a mere pleading standard[]" and "[class] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quotation marks and citation omitted). A class that fails to satisfy all four requirements of Rule 23(a) may not be certified. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). And even if all four requirements of Rule 23(a) are satisfied, a class meeting those prerequisites "must also pass at least one of the tests set forth in Rule 23(b)." *Id*. In this case, AD seeks class certification under Rule 23(b)(3).

AD moves this Court to certify the following class with respect to its claim that PRC violated the TCPA:

> All persons in the United States who received a facsimile, soliciting their participation in a paid research study/project, from or on behalf of Defendant and who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from Defendant, within the four years prior to the filing of the Complaint until the class is certified.

(Doc. No. 9 at 5.)

5

1. **Ascertainability**

Although not set forth as a prerequisite under Rule 23, "'the Sixth Circuit has implied a Rule 23 ascertainability requirement. Under this requirement, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Coop. Med. Health Care Corp., P.A.*, 2021 WL 3808939, at *2 (internal quotation marks omitted) (quoting *Humphrey v. Stored Value Cards*, No. 1:18-cv-1050, 2018 WL 6011052, at *5 (N.D. Ohio Nov. 16, 2018) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012))). "'For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Young*, 693 F.3d at 538 (quoting *Moore's Federal Practice* § 23.21[3] (citations omitted)).

Here, AD's proposed class is defined by the objective criteria of persons receiving a fax from PRC soliciting participation in a research study and who did not give consent or have an ongoing relationship with PRC within four years prior to the filing of the complaint until the class is certified. AD argues that the Court can "readily determine" from PRC's fax records whether a person is a member of the class. (Doc. No. 9 at 5.) "In the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017) (quoting *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)).

At this juncture, given the law of the Sixth Circuit and AD's allegations concerning the existence of fax records, the Court concludes that AD has conditionally satisfied the ascertainability requirement for class certification.

### 2. Numerosity

Turning to the requirements of the civil rules for class certification, Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members would be impracticable. That said, no strict numerical test exists. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). But in general terms, the Sixth Circuit has held that a class of thirty-five was sufficiently large to merit certification. *See Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *see also Phillips v. Phillip Morris Cos. Inc.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014) ("Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty.") (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

In this case, AD alleges that the number of class members is unknown but likely consists of thousands "given the extensive nature of Defendant's business and the need to contact hundreds of thousands of individuals to participate in its surveys." (Doc. No. 1 ¶ 16.) The substantial number of class members alleged in the complaint is deemed admitted by PRC as a result of its default and is sufficient to satisfy the numerosity requirement of Rule 23(a). *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ("substantial numbers usually satisfy the numerosity requirement").

Taking AD's factual allegations as true, the Court finds that the numerosity requirement is conditionally satisfied. *See Coop. Med. Health Care Corp., P.A.*, 2021 WL 3808939, at *4 (finding

numerosity requirement conditionally satisfied where PRC defaulted and plaintiff alleges that thousands received unsolicited faxes).

### 3. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." It is well-settled that "there need only be one question common to the class[,]" so long as the resolution of that question "will advance the litigation." *Sprague*, 133 F.3d at 397 (6th Cir. 1998) (en banc) (citation omitted). Class relief is particularly appropriate when the "'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Card v. City of Cleveland*, 270 F.R.D. 280, 293 (N.D. Ohio 2010) (quoting *Falcon*, 457 U.S. at 155 (internal quotation marks and further citation omitted)).

The Rule 23(a)(2) commonality requirement is "qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) (quoting 1 NEWBERG ON CLASS ACTIONS, section 3:10 at 3-50 (3d ed. 1992)). Under this standard, even "one question common to the class" can satisfy the commonality requirement under Rule 23(a). *Sprague*, 133 F.3d at 397. The idea of commonality is that "the class members have 'suffered the same injury' such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Wendell H. Stone Co.*, 2021 WL 1080398, at *4 (quoting *Wal-Mart*, 564 U.S. at 350).

In this case, AD alleges that the facsimile it received and attached to the complaint is a "form" which PRC sent nationwide without the prior consent of the recipients who all suffered the same injury as AD as a result of PRC's violation of the TCPA. (*See* Doc. No. 1 ¶¶ 12–14.) The Court finds that the common fact issues alleged by AD relating to PRC's fax solicitations, and

8

common legal questions relative to the legality of the faxing activity under the TCPA, are sufficient to conditionally satisfy the Rule 23(a) commonality requirement. *See Lehman*, 2019 WL 8405591, at *3 ("Other courts in this District routinely find the commonality requirement satisfied in TCPA actions when the class consists of recipients of fax advertisements.") (citing *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 444–45 (N.D. Ohio 2012)).

### 4. Typicality

The typicality requirement means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). Here, typicality is implicit in AD's allegations and the proposed class definition. Like AD, proposed class members allegedly received a facsimile from PRC soliciting them to participate in a paid research project in violation of the TCPA. (*See* Doc. No. 1 ¶¶ 11–15.)

Accepting AD's allegations as true, the Court finds that Rule 23(a)(3)'s typicality requirement is conditionally satisfied. *See Lehman*, 2019 WL 8405591, at *3 ("Representative claims are 'typical' if each class member's claims are based upon the same facts and legal theory.") (citing *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12-cv-2257, 2014 WL 6750690 at *6, (N.D. Ohio Dec. 1, 2014); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at *4 (E.D. Mich. Dec. 27, 2010) ("The facts before the Court show that each class member received the same fax. Each member's claim is based on the same legal theory as Plaintiff's. Plaintiff's claims are typical of the other class members' claims."); *Coop. Med. Health Care Corp., P.A.*, 2021 WL 3808939, at *5 ("The

Court takes Plaintiff's allegations as true that Cooperative Medical's claims regarding violation of the TCPA are identical to the claims of the putative class. As such, the typicality requirement is conditionally satisfied.").

### 5. Adequacy of representation

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002) (citation omitted). To assess the adequacy of the representation, the Court must consider whether the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two aspects to this inquiry: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted); *see also Coop. Med. Health Care Corp., P.A.,* 2021 WL 3808939, at *5 (same) (citing *Senter*, 532 F. 2d at 525). In conducting this inquiry, the Court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted).

In the complaint, AD alleges that it has no interest antagonistic to the proposed class and that it will fairly and adequately represent and protect the interest of the class. AD further alleges that both AD and counsel are committed to vigorously prosecuting this action on behalf of members of the proposed class and have the resources to do so. (Doc. No. 1 ¶ 19.) Further with respect to the adequacy of counsel, AD lists more than two dozen class action lawsuits in state and federal court "successfully litigated" by counsel in this action. (Doc. No. 9 at 8–10.)

With respect to the first factor, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896, 52 L. Ed. 2d 453 (1977) (citing *Schlesinger*, 418 U.S. at 216). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

There is no apparent conflict in the record between AD, counsel, and the proposed class members. At this juncture, the Court has no reason to otherwise question the adequacy of AD as the class representative or AD's counsel as class counsel.[3] The Court finds that AD has conditionally satisfied the adequacy requirement of Rule 23.

Having conditionally satisfied the prerequisites of Rule 23(a), a class must also satisfy at least one of the tests set forth in Rule 23(b) to be certified. *Sprague*, 133 F.3d at 397. Here, AD claims that the proposed class satisfies Rule 23(b)(3).

6. **Rule 23(b)(3) Predominance and Superiority**

Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

---

[3] The Court conditionally finds plaintiff's counsel to be adequate with caution. The Court notes that in this action, the Court was required to issue a show cause order because plaintiff took no action after PRC failed to respond to the complaint. The Court's show cause order prompted plaintiff to seek an entry of default and file the pending motions. A show cause order was also required in *Cooperative Medical Health Care Corporation, P.A. v. Medical Synergy, Inc.*, Northern District of Ohio Case No. 1:21-cv-46, in order to prompt plaintiff, who is represented by the same counsel as is the plaintiff in the instant action, to prosecute its case. In addition, counsel in Case No. 1:21-cv-46 filed the same deficient motion for class discovery as now before the Court. *See Coop. Med. Health Care Corp., P.A.*, 2021 WL 3808939, at *10 (denying plaintiff's deficient motion for class discovery without prejudice). And *Advanced Dermatology v. Le Magasin de L'Encre*, Northern District of Ohio Case No. 1:19-cv-2503, where plaintiff was represented by the same firm as in the instant action, was dismissed for want of prosecution.

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
**(D)** the likely difficulties in managing a class action.

*Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted). "'To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof.'" *Siding & Insulation Co.*, 279 F.R.D. at 446 (quoting *Beattie*, 511 F.3d at 564 (citations and quotation marks omitted)).

Here, AD alleges that PRC transmits unsolicited faxes of the form attached to the complaint as Exhibit 1 to recipients across the country who do not have a business relationship with PRC and who did not give their consent in violation of the TCPA and resulting in the same injury to all recipients. (Doc. No. 1 ¶¶ 7–14.) AD's allegations, deemed admitted by PRC's default, are sufficient to satisfy the predominance requirement of Rule 12(b)(3). *See Lehman*, 2019 WL 8405591, at *4 ("Predominance is easily satisfied in TCPA fax class actions where 'common questions are at the heart of th[e] litigation,' namely, 'whether Defendants violated the TCPA by sending the faxes with the improper 'opt-out' information to every class member.'") (quoting *Wagner Wellness*, 2014 WL 6750690, at *6); *see also Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, No. 1:11-cv-1062, 2012 WL 1425093, at *5 (N.D. Ohio Apr. 24, 2012) ("By

definition, all class members, including Plaintiff, received an unsolicited facsimile advertisement from Defendant, which is alleged to be a violation of the TCPA.").

At this juncture, the Court finds that the predominance factor of Rule 23(b)(3) is conditionally satisfied.

### *Superiority*

The proposed class in this TCPA action also satisfies the superiority requirement. "Under the TCPA, an individual plaintiff is unlikely to recover more than a small amount and, therefore, individuals are unlikely to bring suit. Therefore, a class action is the superior method for adjudicating the claims." *Siding & Insulation Co.,* 2012 WL 1425093, at *5 (citing *Amchem Prods. Inc.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (internal quotation marks and citation omitted)). "Likewise, resolution of the issues as a class, rather than in thousands of individual lawsuits, is an efficient use of judicial resources." *Id*.

Here, AD alleges that the size of the proposed class is in the thousands. In the interest of judicial economy and where, as here, it may not be "'economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Young*, 693 F.3d at 545 (quoting *Deposit Guar. Natl Bank v. Roper,* 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)).

Accordingly, the Court conditionally finds that class treatment is superior to individual litigation to obtain a fair and efficient adjudication of AD's class action TCPA claims. *Avio, Inc.*

*v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) ("[T]he TCPA provides an example of a so-called "negative value suit," where the time, expense, and effort of bringing a claim of a single violation of the statute will not be worth the payoff to many litigants, ultimately chilling enforcement of the law if class actions cannot be brought."); *see also Am. Copper & Brass, Inc.*, 2012 WL 3027953, at *4 ("This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims.") (citing *Amchem Prods. Inc.,* 521 U.S. at 617), *aff'd,* 757 F.3d 540 (6th Cir. 2014).

Having determined that AD's proposed class satisfies the requirements of ascertainability, Rule 23(a), and Rule 23(b)(3), the Court conditionally certifies the following class:

> All persons in the United States who received a facsimile, soliciting their participation in a paid research study/project, from or on behalf of Defendant and who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from Defendant, within the four years prior to the filing of the Complaint until the class is certified.

### B. Motion for Class Discovery

In its motion for class discovery, AD claims that it must conduct discovery before seeking default judgment. (*See* Doc. No. 10.) That is the entire sum and substance of AD's motion—the motion contains no explanation or detail regarding the targets, nature, or scope of the discovery it seeks to conduct.

This case is atypical from a discovery standpoint in that, because of PRC's default, AD will not be able to meet and confer with PRC pursuant to Fed. R. Civ. P. 26(f) prior to the initiation of discovery. But Rule 26(d)(3) permits the Court to authorize discovery in its discretion in the interests of justice. Requests for immediate discovery as have been made here requires a showing of good cause. *See Coop. Med. Health Care Corp., P.A.*, 2021 WL 3808939, at *8–9 (collecting

cases and citing among authority 8A Fed. Prac. & Proc. Civ. § 2046.1 (3d ed.) ("Although the rule [26] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.")).

Good cause for expedited discovery has been permitted in situations such as default when failing to conduct discovery would negatively impact the ultimate resolution of the case. *Id.* at *9 (collecting cases). That said, AD has not addressed this issue in its motion, nor has it indicated who it proposes to seek discovery from, the nature and scope of any discovery, or the timeframe required to complete such discovery. While the Federal Rules of Civil Procedure provide the Court with broad discretion regarding the timing and scope of discovery, given the deficiencies of AD's motion the Court cannot allow AD unfettered permission to conduct discovery from unknown individuals or entities of unknown nature or scope. *See id.*; *see also Cingular Wireless, LLC v. Hisp. Sols., Inc.*, No. 106-cv-2695-WSD, 2006 WL 3490802, at *2 (N.D. Ga. Dec. 1, 2006) (Declining to allow Cingular "unfettered discretion" to conduct discovery where "Cingular simply has not provided a sufficient factual basis or factual predicate for the Court to evaluate whether the unspecified expedited discovery requested will be reasonable or appropriate, and the Court is unwilling to write Cingular a blank check to draw on the Court's authority.").

Accordingly, AD's motion to permit class discovery is denied without prejudice and with leave to submit a properly supported motion within fourteen (14) days.

### III.     Conclusion

For all of the foregoing reasons, Advanced Dermatology's motion for class certification is conditionally granted, and Advanced Dermatology's motion to permit class discovery is denied without prejudice.

**IT IS SO ORDERED**.

Dated: November 30, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**